UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAULO PINCARO, MELISSA NAU, and TIMOTHY
L. KEISER, on behalf of themselves and all others
similarly situated,

                          Plaintiffs,

                  –against –

GLASSDOOR, INC.,

                        Defendant.

**OPINION AND ORDER**

16 Civ. 6870 (ER)

Ramos, D.J.:

       Defendant Glassdoor, Inc. ("Glassdoor") operates a website that provides a database of company reviews, ratings, salary and benefits information, and job listings. Declaration of Tom O'Brien ("O'Brien Decl.") (Doc. 16) ¶ 3. Plaintiffs Melissa Nau ("Nau") and Paulo Pincaro ("Pincaro") (together, "Plaintiffs")[1] are suing Glassdoor on behalf of themselves and others similarly situated for violations of the Stored Communications Act, 18 U.S.C. §§ 2702, 2707, as well as violations of New York State law. Complaint ("Cmpl.") (Doc. 1) ¶ 2. Plaintiffs allege that Glassdoor publically exposed the email addresses of at least 600,000 of its members, violating their privacy rights and its own policies. *Id.* ¶ 6. Plaintiff contends that confidentiality is essential to Glassdoor's members, who share negative opinions of their current or former employers and would be susceptible to possible retaliation. *Id.* ¶ 20. Glassdoor moves to

---

[1] On November 28, 2016, Plaintiff Timothy L. Keiser ("Keiser") agreed to dismiss his claims voluntarily, after Glassdoor's counsel informed Plaintiffs' counsel that Keiser's email address was not one of the email addresses inadvertently exposed in emails—which is the basis for the lawsuit. *See* Glassdoor Inc.'s Memorandum of Law in Support of its Motion to Compel Arbitration, or in the Alternative, Transfer ("Def.'s Mem.") (Doc. 17) at 2 n.1.

compel arbitration and stay the case pending completion of arbitration, contending that the Plaintiffs agreed to a mandatory arbitration provision in the company's terms of use. Doc. 15.[2] For the reasons outlined below, Glassdoor's motion to compel arbitration is GRANTED.

## I.    BACKGROUND

The facts are undisputed and are summarized as follows.

Plaintiffs were website users who registered for Glassdoor accounts. Before submitting content, Glassdoor users must create a free account by registering with a valid email address, or linking a social media account. *See* O'Brien Decl. ¶¶ 4, 6. Registrants are notified that, by creating an account, they agree to be bound the company's Terms of Use and Privacy Policy. *See id.* During the registration process, registrants are provided with a hyperlink to the policies. *See id.*

### The 2009 Terms of Use

Pincaro registered for a Glassdoor account using his Facebook account on August 1, 2013. *Id.* ¶ 6. At that time, all users who created an account were required to fill out a sign-up page that contained a statement informing them that by creating an account they were agreeing to Glassdoor's April 26, 2009 Terms of Use (the "2009 Terms of Use") and providing them with a hyperlink they could click on to review the Terms. *Id.* ¶ 6. Specifically, the sign-up page Pincaro accessed referenced the Terms of Use at the bottom in fine print, hyperlinked. *See* Addendum A (O'Brien Decl. Ex. 3).[3] The 2009 Terms of Use were also available on Glassdoor's website at the time Pincaro registered and at all times thereafter. O'Brien Decl. ¶ 7.

---

[2] In the alternative, Glassdoor moves to transfer the case to the Northern District of California. *Id.*

[3] The Court notes, as Plaintiff points out, that the exhibit submitted with Glassdoor's opposition papers contains two separate web browser screenshots, or interfaces. *See id.* The interface on the first page indicates "by signing up you are accepting our Terms of Use." The text of "Terms of Use" is in blue, with the other text in black. *Id.* at 1. The

The 2009 Terms of Use included an arbitration provision which provided that "[a]ny claim or dispute in connection with this Agreement shall be resolved in a cost effective manner through binding non-appearance-based arbitration" and that the arbitration "shall be initiated through an established alternative dispute resolution provider mutually agreed upon by the parties." O'Brien Decl. Ex. 4 (the "2009 Terms of Use") ¶ 9F.

The 2009 Terms of Use also expressly provided that "[t]his Agreement may be modified by us from time to time" and "[i]f we make material changes to the Agreement, we will notify you by sending an e-mail to your email address . . . ." *Id.* ¶ 9A. The 2009 Terms of Use further provided that "[y]ou agree that such amended Agreement shall be effective thirty (30) days after being sent to you, and your continued use of the Services after that time shall constitute acceptance of the amended Agreement." *Id.*

**The 2014 Terms of Use**

In October 2014, Glassdoor sent an email (the "October 2014 Email") to all its registered users, including Pincaro, indicating that it had updated its Terms of Use and Privacy Policy. O'Brien Decl. ¶ 9; O'Brien Decl. Ex. 5. The revised Terms of Use were available for review by clicking on the hyperlink provided in the email, as well as by a link on Glassdoor's website. *Id.* ¶ 9; O'Brien Decl. Ex. 2 (the "2014 Terms of Use"). The October 2014 email further provided that the revised terms will become effective within thirty days of receipt of the email. Pincaro did not delete his Glassdoor account after receiving this email. O'Brien Decl. ¶ 9.

---

second interface prompts a user to sign in with Facebook or create an account, and states, "By creating your account, you are accepting our Terms of Use." The text of "Terms of Use" is underlined, and the text of the entire sentence is in black. *Id.* at 2. It is unclear whether a user such as Pincaro who signed up with Facebook would see both interfaces or only one.

On December 1, 2015, Nau registered for a Glassdoor account using her Facebook account. O'Brien Decl. ¶ 4. Nau was similarly presented with a pop-up screen when she created her account that stated: "By creating an account, I agree to Glassdoor's Terms of Use and Privacy Policy." *See* Addendum B (O'Brien Decl. Ex. 1); O'Brien Decl. ¶ 4.[4] The text of "Terms of Use" and "Privacy Policy" are in blue, while the remainder of the words are in black. *See* Addendum B. By clicking on either phrase, a user would have been connected via hyperlink to the full agreements. O'Brien Decl. ¶ 4. When Nau signed up, the 2014 Terms of Use were already in use. *Id.* ¶ 5.

The 2014 Terms of Use, like the 2009 Terms of Use, included an express agreement to arbitrate. *See* 2014 Terms of Use ¶ 14. The Terms of Use provided in bold, capitalized text that users were "WAIVING THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION." *Id.* ¶ 14(A). Moreover, it stated that "any and all disputes between [the user] and Glassdoor arising under or related in any way to this Agreement must be resolved through binding arbitration" and that the "arbitration will be governed by the Commercial Arbitration Rules . . . of the American Arbitration Association ("AAA")." *Id.* ¶ 14(B).

The 2014 Terms of Use also stated that Glassdoor could make revisions to the Terms of Use after providing notice as follows:

> We may revise these Terms from time [sic] by posting an updated version on Glassdoor and you agree that the revised Terms will be effective thirty (30) days after the change is posted. Your continued use of Glassdoor is subject to the most current effective version of these Terms.

---

[4] Again, the exhibit submitted with Glassdoor's opposition papers contains two separate interfaces. *See id.* at 2. It is unclear whether these are screenshots from a web browser or mobile device. These interfaces are substantially similar, with the only difference being that the first says, "Not a member? Sign up" while the second says, "Already a member? Sign in." *Id.* Both contain language at the bottom stating, "By creating an account, I agree to Glassdoor's Terms of Use and Privacy Policy."

2014 Terms of Use ¶ 13.

**The 2016 Terms of Use**

In July 2016, Glassdoor again amended its Terms of Use (the "2016 Terms of Use").

O'Brien Decl. ¶ 11.  Glassdoor posted the updated Terms of Use on its website and sent an email

on July 22, 2016 notifying its registered members of the changes.  *Id.*; O'Brien Decl. Ex. 7 (the

"July 2016 Email").  The email included a hyperlink to the updated Terms and summarized

certain of the changes.  O'Brien Decl. ¶ 11.  The July 2016 Email informed users that the

updated Terms of Use would become effective in thirty days and users should delete their

account if they did not want to be subject to the updated Terms.  O'Brien Decl. Ex. 6 (the "2016

Terms of Use") ¶¶ 11–12.

The 2016 Terms of Use provided the following dispute resolution procedures:

> If you reside in the United States, subject to the *Exceptions to Arbitration* set forth below, you and Glassdoor each agree that any and all disputes between consumer users of Glassdoor and Glassdoor arising under or related in any way to this Agreement and such users' use of Glassdoor must be resolved through binding arbitration as described in this section.

2016 Terms of Use ¶ 14(B) (emphasis in original).  The Terms also provided that any

arbitration would "be governed by the Consumer Arbitration Rules of the American

Arbitration Association. . . ."  *Id.*  In addition, the 2016 Terms of Use provided users with

a procedure to opt-out of the arbitration provisions:

> *Opt-Out Procedure.*  IF YOU ARE A GLASSDOOR USER, YOU CAN CHOOSE TO REJECT THIS AGREEMENT TO ARBITRATE ("OPT-OUT") BY MAILING US A WRITTEN OPT-OUT NOTICE ("OPT-OUT NOTICE").  THE OPT-OUT NOTICE MUST BE POSTMARKED NO LATER THAN 30 DAYS AFTER THE DATE THESE TERMS FIRST BECOME APPLICABLE TO YOU . . .

*Id.* (emphasis in original). If a user opted-out in accordance with this provision, the 2016 Terms of Use provided:

> For any claim, dispute or other legal proceeding not subject to the "Agreement to Arbitrate" provision below, the claim or dispute shall be brought and litigated exclusively in the state courts located within Marin County, California or the federal courts in the Northern District of California, as appropriate, and you agree to submit to the personal jurisdiction of each of these courts for the purpose of litigating such claims or disputes.

*Id.* ¶ 14(A).

Neither Plaintiff opted out of arbitration or deleted their accounts. O'Brien Decl. ¶ 12. Instead, after receiving the July 2016 Email, both Plaintiffs continued to access and use Glassdoor.com. *Id.*

It is this July 2016 Email that Plaintiffs now allege exposed at least 600,000 of Glassdoor's members' email addresses because the manner in which Glassdoor sent the email allowed each recipient to see the addresses of every other recipient. Cmpl. ¶¶ 22–24.[5] After sending the Email, Glassdoor stated, "We are extremely sorry for this error. We take the privacy of our users very seriously and we know this is not what is expected of us. It certainly isn't how we intend to operate." *Id.* ¶ 25.

## II.  APPLICABLE LAW

### A.  Procedural Framework

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring

---

[5] The July 2016 Email was sent in multiple tranches to 1,000 users at a time. Thus, each email recipient was able to see the email addresses of 999 other Glassdoor members. *Id.*

arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974)). Thus, parties are not required to arbitrate unless they have agreed to do so. *Id.* Before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. *Id.* This question is determined by state contract law principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial, which is a similar standard to that applicable for a motion for summary judgment. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (citations omitted). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws all reasonable inferences in favor of the non-moving party. *Meyer v. Uber Techs., Inc.*, No. 16-2750-CV, 2017 WL 3526682, at *4 (2d Cir. Aug. 17, 2017) (internal quotation marks and citations omitted).

If the Court determines that a valid agreement to arbitrate exists, the Court must then determine whether the particular dispute falls within the scope of arbitration agreement. *Specht*

*v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." *Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund*, No. 07 Civ. 1951 (WCC), 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007). Here, Plaintiffs do not assert that any of their claims fall outside the Glassdoor's arbitration provision. Thus, the Court limits its analysis to whether an enforceable arbitration agreement exists.

### B. Choice of Law and State Contract Law

In deciding whether parties agreed to arbitrate a certain matter, a court should generally apply state-law principles to the issue of contract formation. *Specht*, 306 F.3d at 27; *Nicosia*, 834 F.3d at 231 ("State law principles of contract formation govern the arbitrability question."). Here, neither party addresses which state's law should apply. The Terms of Use themselves reference the application of California law. *See* 2009 Terms of Use ¶ 9(F) ("This Agreement shall be governed by the laws of the State of California without giving effect to any conflict of laws principles that may provide the application of the law of another jurisdiction."); 2014 Terms of Use ¶ 14(A) ("This Agreement and any and all claims or disputes by or between you or us . . . shall be governed by the laws of the State of California without giving effect to any conflict-of-laws principles that may otherwise provide for the application of the law of another jurisdiction."); 2016 Terms of Use ¶ 14(A) ("This Agreement and any and all claims, disputes, or other legal proceedings by or between you or us . . . shall be governed by the laws of the State of California without giving effect to any conflict-of-laws principles that may otherwise provide for the application of the law of another jurisdiction.").

However, relying on such contractual provisions before a contract has been found to have been accepted by the parties as enforceable is inappropriate. *Schnabel*, 697 F.3d at 119, 126–27 ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."). Accordingly, either the law of California—where Glassdoor is located—or New York and Georgia, where Pincaro and Nau reside, respectively—may apply to this dispute. *See Schnabel*, 697 F.3d at 119. The Second Circuit has held that New York and California apply "substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 2017 WL 3526682, at *4 (citing *Schnabel*, 697 F.3d at 119). Similarly, and as discussed further below, the Court notes that the result would be the same if the Court applied Georgia law. *See Bruce v. PharmaCentra*, LLC, No. Civ. A. 1:07 Civ. 3053 (TWT), 2008 WL 1902090, at *4 (N.D. Ga. Apr. 25, 2008) (noting that "[t]he parties to an arbitration agreement must assent to its contractual terms in order for it to be enforceable under Georgia law" and analyzing the issue with reference to standard contract law requirements). Which state's law applies is therefore of no moment. *See id.*

To form a contract, there must be "[m]utual manifestation of assent, whether by written or spoken word or by conduct." *Specht*, 306 F.3d at 29. However, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id.* at 30 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987 (1972)). Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms. *Schnabel*, 697 F.3d at 120. Whether a reasonably prudent user would be on inquiry

notice turns on the "[c]larity and conspicuousness of arbitration terms." *Specht*, 306 F.3d at 30. In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant web interface. *Meyer*, 2017 WL 3526682, at *5. Thus, only if the undisputed facts establish that there is "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms" can a court find that a valid agreement to arbitrate has been formed. *Id.* (citing *Specht*, 306 F.3d at 35).

## III.  DISCUSSION

### A.  Threshold Question of Arbitrability

As a preliminary matter, the parties dispute whether this Court or an arbitral tribunal is the proper forum to determine whether the parties formed an agreement to arbitrate.  Glassdoor argues that all challenges to its Terms of Use agreements must be determined by an arbitrator because the 2016 Terms of Use incorporates and binds the parties to the Consumer Arbitration Rules of the American Arbitration Association, and in turn, the AAA rules provide that the arbitrator has the power to rule on his or her jurisdiction.  Def.'s Mem. at 13–14.

Questions of arbitrability" is a term of art covering "dispute[s] about whether the parties are bound by a given arbitration clause" as well as "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  The Supreme Court has "distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution."  *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) (quoting *Howsam,* 537 U.S. at 83–85); *see also Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 208, 211 (2d Cir. 2005) (citing *First Options of Chicago, Inc.*

*v. Kaplan*, 514 U.S. 938, 944–45 (1995)) ("Under the FAA, there is a general presumption that the issue of arbitrability . . . should be resolved by the courts.").[6] The issue of arbitrability should thus be decided by this Court unless "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that [they] be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks omitted).

While there are three different Terms of Use at issue in this action, the Court finds that the 2016 Terms of Use is the operable agreement for purposes of determining the issue of arbitrability. The October 2014 and July 2016 email communications expressly advised users that the Terms were being updated and provided those Terms via hyperlink. Plaintiffs do not dispute that they received the emails notifying them that Glassdoor had updated its Terms.[7]

The issue of whether Plaintiffs agreed to arbitrate their claims (and the issue of arbitrability) thus turns on whether the July 2016 Email provided them with "[r]easonably conspicuous notice" of the existence of the arbitration provision and whether they unambiguously manifested their assent to those terms. *Specht*, 306 F.3d 35. The Court finds that the design and language used in the July 2016 Email reasonably put Plaintiffs on notice that the

---

[6] "Whether parties have obligated themselves to arbitrate certain issues, including the question of arbitrability, is determined by state law." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). New York, California, and Georgia follow the same rule as federal law. *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) ("New York law follows the same rule, i.e., it acknowledges the well settled proposition that the question of arbitrability is an issue generally for judicial determination, but at the same time it recognizes an important legal and practical exception when parties evince a clear and unmistakable agreement to arbitrate arbitrability.") (internal quotation marks omitted); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797 (SBA), 2014 WL 1868787, at *2 (N.D. Cal. May 7, 2014) ("California law is consistent with federal law on the question of who decides disputes over arbitrability."); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1147 (11th Cir. 2015) (Georgia requires a "clear and unmistakable" contractual commitment to arbitrate the issue of arbitrability). Thus, choice-of-law does not alter the Court's conclusion here.

[7] Nau did not register for Glassdoor until 2015, so there is no allegation that she received the October 2014 Email. *See* O'Brien Decl. ¶ 4.

Terms were being updated and that by using the website 30 days after receipt of the email, Plaintiffs unambiguously assented to the Terms as a matter of law.[8]

The July 2016 Email included a blue underlined hyperlink to the 2016 Terms of Use. Specifically, the email indicated that the entire policy could be found "here", with the word "here" being underlined and in blue. *Id.* at 1. As the Second Circuit in *Meyer* noted, a reasonably prudent user knows that text that is highlighted in blue and underlined is a hyperlink to another webpage where additional information will be found. *Meyer*, 2017 WL 3526682, at *7. Importantly, the email further highlighted certain notable changes in the policy, including that Glassdoor "updated [its] Dispute Resolution section" to "expand[] the arbitration provision . . ." *Id.* at 2.

In terms of unambiguous consent, the hyperlinked 2016 Terms of Use and Glassdoor's July 2016 Email informed users that, pursuant to the terms previously agreed to, the updated Terms would become effective in thirty days and users should delete their account if they did not want to be subject to the updated terms. Neither of the Plaintiffs opted out of arbitration or deleted their accounts. O'Brien Decl. ¶ 12. Instead, after receiving the July 2016 Email, both Plaintiffs continued to access and use Glassdoor.com. *Id.* The fact that Plaintiffs are deemed to have assented to these Terms of Use by their continued use of Glassdoor's website, as opposed to requiring some further, affirmative step, does not render these updated terms inapplicable. *See, e.g., Sacchi v. Verizon Online LLC*, No. 14 Civ. 423 (RA), 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) (compelling arbitration where plaintiff received notice, including by email, that informed him of amendment to terms of use); *In re Facebook Biometric Info. Privacy*

---

[8] For purposes of this Opinion, this finding is relevant only to the threshold issue of arbitrability, and the Court makes no determination on the merits. For the reasons discussed within, the Court finds that the proper forum to decide whether a valid arbitration agreement exists is the arbitral tribunal.

*Litig.,* 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (users were deemed to have assented to the amended terms by their continued use where users with registered email addresses were provided email notice that the terms were changing with a link to the new terms).

Turning now to the substance of the agreement, several provisions in the 2016 Terms of Use evidence the parties' intent to arbitrate all issues, including, as is relevant here, the gateway issue of arbitrability:

a)  "[Y]ou and Glassdoor each agree that any and all disputes between consumer users of Glassdoor and Glassdoor arising under or related in any way to this Agreement and such users' use of Glassdoor must be resolved through binding arbitration as described in this section."  2016 Terms of Use ¶ 14(B).

b)  "YOU AND GLASSDOOR ARE EACH WAIVING THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION."  *Id.* ¶ 14.

c)  "The arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA") . . . The AAA's rules and a form for initiating the proceeding are available at www.adr.org."  *Id.* ¶ 14(B).

The meaning of the first of these provisions is plain indeed:  any and all disputes related to Plaintiff's use of Glassdoor are to be determined by an arbitrator.

Additionally, Rule 14 of the AAA Consumer Arbitration Rules states:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer Rule R-14.[9]

The Second Circuit has held that where, as here, a broad arbitration provision incorporates the AAA Arbitration Rules, the arbitrator and not the courts must decide the

---

[9] "The AAA maintains multiple sets of rules for different types of disputes, such as commercial, consumer, and employment."  *Tompkins v. 23andMe, Inc.*, No. 5:13 Civ. 05682 (LHK), 2014 WL 2903752, at *10 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).  This language in Consumer Rule 14 is identical to the language of AAA Commercial Arbitration Rule 7, which several Courts in this district have construed to require arbitration, *see infra*.  *See* AAA Commercial R-7.

threshold issue of arbitrability. *See Contec*, 398 F.3d at 208. In *Contec*, the parties agreed to an arbitration provision similar to that at issue in this case, stating that "any controversy arising with respect to this Agreement" would be determined by an arbitrator "in accordance with the Commercial Arbitration Rules of the [AAA] . . . ." *Id.* at 208. The Second Circuit concluded that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.*; *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 395 (2d Cir. 2011) (when arbitration clause incorporated rules analogous to AAA commercial arbitration rules, the arbitrator and not the court decides arbitrability); *Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*, 518 Fed. App'x. 20, 21 (2d Cir. 2013) ("by incorporating the [AAA] rules the parties agreed to have the arbitrators decide arbitrability . . . ."); *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, 167 Fed. App'x. 266, 268 (2d Cir. 2006) ("The intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the American Arbitration Association ("AAA") that empower the arbitrator to determine issues of arbitrability."); *Lapina v. Men Women N.Y. Model Mgmt. Inc*., 86 F. Supp. 3d 277, 283 (S.D.N.Y. 2015) ("It is well-settled that when an arbitration clause incorporates by reference the AAA rule that arbitrators are to determine their own jurisdiction, this incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.") (quotation marks omitted).[10]

---

[10] Indeed, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases from majority of circuits, including the Second Circuit in *Contec*)).

The 2016 Terms of Use has broad language that commits to arbitration any and all disputes arising under or related in any way to the agreement. And, as noted, the 2016 Terms of Use incorporates by reference the AAA Rules, which commit questions of arbitrability to the arbitrator. Therefore, it is for the arbitrator—and not this Court—to decide the issue of whether the parties entered into a valid and enforceable arbitration agreement.[11]

## B. Stay Pending Arbitration

Glassdoor further requests that this case be stayed while the parties proceed to arbitration. Def.'s Mem. at 14–15. The Second Circuit has held that a district court must stay an action— rather than dismiss it—if a party so requests, even if all the claims are sent to arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.), *cert. denied,* 136 S. Ct. 596 (2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); *see also Celltrace Commc'ns Ltd. v. Acacia Research Corp*., No. 16-2006, 2017 WL 1476600, at *1 (2d Cir. Apr. 25, 2017) ("When all claims are referred to arbitration and a stay requested, as happened here, the Federal Arbitration Act . . . *requires* a stay of proceedings.") (internal quotation marks and citations omitted). Accordingly, the Court will retain jurisdiction and stay the proceedings in this

---

[11] Even if the Court were to consider the merits of whether a valid agreement to arbitrate was formed, the Court would still compel arbitration. The Second Circuit's recent decision in *Meyer v. Uber Techs*., Inc., No. 16-2750-CV, 2017 WL 3526682, at *6 (2d Cir. Aug. 17, 2017) is particularly instructive due to the similarities of the user registration processes. For substantially the same reasons outlined in *Meyer*, the Court finds the design and language used for the registration process render the notice provided to Plaintiffs reasonable as a matter of law. Although there is some ambiguity about which interface each user was presented with, the Court finds that under either of the interfaces provided by Glassdoor, Plaintiffs had reasonable notice. Moreover, there is manifestation of assent to arbitration because as in *Meyer*, a reasonable user "would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not" and thus assent was unambiguous. *Id.* at *9. Moreover, here Glassdoor has presented undisputed evidence that Plaintiffs received additional notice of the Terms of Use after they completed the registration process, including emails informing Plaintiffs of updates to the Terms of Use. Thus, the Court finds Plaintiffs were on inquiry notice of Glassdoor's Terms of Use, including the arbitration provisions.

matter pending arbitration. *Katz,* 794 F.3d at 347; *see also Consol. Precision Prod. Corp. v. Gen. Elec. Co.,* No. 15 Civ. 8721 (PKC), 2016 WL 2766662, at *6 (S.D.N.Y. May 12, 2016) (granting motion to stay action where terms broadly incorporated the Commercial Arbitration Rules of the AAA, and those rules granted the arbitrator the authority to decide arbitrability).

## IV. CONCLUSION

For the reasons set forth above, Glassdoor's motion to compel arbitration is GRANTED. The parties are instructed to advise the Court within 48 hours of the outcome of the arbitration. The Clerk of the Court is respectfully directed to stay this action pending arbitration and terminate the motion, Doc. 15.

SO ORDERED.

Dated:　September 12, 2017
　　　　New York, New York

Edgardo Ramos, U.S.D.J.

# **ADDENDUM A**

Work in HR

# Get instant access to millions of salaries and reviews

**Sign In with Facebook**

**(Recommended) — Why?**

\* What you view and contribute on Glassdoor is private – it will not appear on Facebook.

OR

Sign Up with Email

By signing up you are accepting our Terms of Use

## What do I get by joining?

All new members automatically get 10 days of access to everything posted by our community – that's millions of company reviews, salaries, interview questions, and more – all posted anonymously by those on the inside.

To upgrade to unlimited access, simply give back to the community by posting an anonymous inside look of your own. It'll only take a minute – and your posts are anonymous. Learn More

About Us | Employers | Careers | Blog | Feedback | Help | Post a Job

Glassdoor is your free inside look at jobs and companies. Salary details, company reviews, and interview questions – all posted anonymously by employees and job seekers.

Browse:  Salaries by Job   Salaries by Company   Salaries by City   Reviews by Company   Interview Questions by Job   Interview Questions by Company   Jobs by Job   Jobs by Title   Jobs by Company   Jobs by City

Copyright © 2008–2013, Glassdoor. All Rights Reserved. Your use of this service is subject to our Terms of Use and Privacy & Cookies Policy. Glassdoor ® is a registered trademark of Glassdoor, Inc.



# **ADDENDUM B**

## Sign in to upload your resume.



 Sign in with Google

 Sign in with Facebook

OR

Email Address

Not a member? Sign up

By creating an account, I agree to Glassdoor's Terms of Use and Privacy Policy.

## Sign up to upload your resume.

 Sign up with Google

 Sign up with Facebook

OR

Email Address

Already a member? Sign in

By creating an account, I agree to Glassdoor's Terms of Use and Privacy Policy.